Mike Ward Butler County Attorney Jail-Judicial Building El Dorado, Kansas 67042
Dear Mr. Ward:
As Butler county attorney you request an opinion concerning the constitutionality of a resolution which prohibits picketing that is targeted at a particular residence. Butler county resolution no. 93-983 provides, in relevant part, as follows:
"WHEREAS, the Board of County Commissioners has an interest in preserving and protecting the traditional value of the home as a place of well being, tranquility and privacy;
"WHEREAS, preserving the sanctity of the home as a retreat to which men and women can repair to escape from the tribulations of their daily pursuits is an important value; and
"WHEREAS, picketing which is targeted, focused or directed at a particular residence and takes place before or about a particular residence, causes emotional disturbances and distress, has a general effect of harassing the residence and destroys the quiet enjoyment and traditional values of the home; and
"WHEREAS, the County has an interest in preserving and protecting these traditional values of the home.
"NOW, THEREFORE, BE IT RESOLVED BY THE BOARD OF COUNTY COMMISSIONERS OF BUTLER, COUNTY, KANSAS, AS FOLLOWS:
"Section 1. It shall be unlawful for any person to engage in picketing which is directed, focused or targeted at a residence and which takes place before or about that residence.
"Section 2. A person is engaged in residential picketing if the person, with or without a sign, is posted at, before or about a particular residence.
"Section 3. Nothing herein shall prohibit the picketing of a residence which is used as a place of business or a place of public assembly."
A regulation which prohibits peaceful picketing on public streets and sidewalks in residential neighborhoods falls within the first amendment preserve. Carey v. Brown, 447 U.S. 455, 65 L.Ed.2d 263, 100 S.Ct. 2286
(1980). In Carey the court concluded that an Illinois statute which prohibited picketing before or about a residence was unconstitutional on equal protection grounds because it contained an exemption for picketing a place of employment which was involved in a labor dispute. However, the court opined that the right to communication is not limitless and that a municipality can protect individual privacy by enacting reasonable time, place and manner regulations applicable to all speech irrespective of content. Carey, 65 L.Ed.2d at 275-276.
In analyzing the validity of a regulation that limits speech, the first determination to be made is the type of forum affected by the regulation. For purposes of this opinion, we will presume that the resolution affects a public forum — "streets, sidewalks and parks", are considered, without more, to be "public forums." Perry EducationAssociation v. Perry Local Education's Association, 460 U.S. 37,74 L.Ed.2d 794, 804, 103 S.Ct. 948 (1983). We therefore apply the heightened scrutiny required when dealing with restrictions on speech in a public forum.
 "Even in a public forum the government may impose reasonable restrictions on the time, place or manner of protected speech, provided the restrictions are justified without reference to the content of the regulated speech, that they are narrowly tailored to serve a significant government interest, and that they leave open ample alternative channels for communication of the information." Ward v. Rock Against Racism, 491 U.S. 781, 105 L.Ed.2d 661, 675, 109 S.Ct. 2746 (1989).
In order for this resolution to pass constitutional muster under this test, it must be content-neutral, narrowly tailored to serve a significant government interest and there must be alternative channels for communication of the picketers' message.
In Frisby v. Schultz, 487 U.S. 474, 101 L.Ed.2d 420, 108 S.Ct. 2495
(1988), the supreme court applied the Ward test and upheld a city ordinance which made it unlawful "for any person to engage in picketing before or about the residence or dwelling of any individual. . . ." The court found that the ordinance was content-neutral because it prohibited all picketing irrespective of the content of the message. The court also concluded that the ordinance was narrowly tailored because it construed the ban to prohibit only "focused picketing taking place solely in front of a particular residence."
 "A complete ban can be narrowly tailored, but only if each activity within the prescription's scope is an appropriately targeted evil. . . . The type of focused picketing prohibited by the Brookfield ordinance is fundamentally different from the more generally directed means of communication that may not be completely banned in residential areas. Here, . . . the picketing is narrowly directed at the household, not the public. The type of picketing banned by the Brookfield ordinance generally does not seek to disseminate a message to the general public, but to intrude upon the targeted residence, and to do so in an especially offensive way. Moreover, even if some such picketers have a broader communicative purpose, their activity nonetheless inherently and offensively intrudes on residential privacy. The devastating effect of targeted picketing on the quiet enjoyment of the home is beyond doubt." Frisby, 101 L.Ed.2d at p. 433.
In addition, the court affirmed the longstanding judicial doctrine that the government has a significant interest in protecting residential privacy. [Prior to the Frisby case, the 10th Circuit upheld an ordinance making it unlawful for any person to engage in picketing before or about a residence of an individual on the basis that the police power encompasses the ability of government to insure that members of the community enjoy in their homes a feeling of "well being, tranquility and peace". Garcia v. Gray, 507 F.2d 539, (10th Circuit 1974).]
 "Preserving the sanctity of the home, the one retreat to which men and women can repair to escape from the tribulations of their daily pursuits is surely an important value. Our decisions reflect no lack of solicitude for the right of an individual `to be let alone' in the privacy of the home . . . the state's interest in protecting the well being tranquility and privacy of the home is certainly of the highest order in a free and civilized society." Carey, 65 L.Ed.2d at 276.
Finally, the court found that the picketers had ample opportunity to convey their message elsewhere, specifically recognizing the right of the picketers to march through the neighborhood, go door-to-door and distribute literature and use the mails to proselytize their views.
Applying the Frisby test to the resolution at issue here, it is our opinion that it is constitutional under the first amendment. The resolution is content-neutral because it prohibits all picketing irrespective of the message that the picketers are attempting to convey. In Attorney General Opinion No. 93-141 we concluded that an ordinance which prohibited picketing "directed towards or interfering with" a service held at a house of worship was not content-neutral because that language could be construed as content-related (i.e. which pickets "interfere" and which do not?)
In contrast, the Butler county resolution embraces the Frisby concept of "focused picketing" which prohibits all picketing that focuses on or targets a person's home. In addition, it is narrowly tailored to prohibit only focused picketing which targets a particular residence and it goes beyond the Frisby decision by specifically allowing picketing where the residence is used as a business or a place of public assembly. The object of the resolution (to preserve the sanctity of the home) is a significant government interest and, as in Frisby, the picketers have alternative channels of communication.
This opinion only addresses a facial challenge to the resolution. There may be challenges concerning the meaning of the resolution as applied in certain circumstances. [See City of Prairie Village v. Hogan, 253 Kan. 423
(1993)]. For example when the 7th Circuit (which originally decidedFrisby) reconsidered the Brookfield ordinance after the supreme court's decision, it mentioned the issue of enforcement practices but concluded that the city had no obligation to answer those concerns on a facial challenge.
 "We appreciate the plaintiffs' concern that it is hard to tell when picketing is `directed at' a particular home. Will it be enough to go round and round the block? Could the picketers march in front of the five houses on either side of the Victorias' (the `targeted residence')? May they stop for one minute, or two, or five in front of the Victorias' place before moving along? Surely they can't evade the law by standing in front of the Victorias' home and occasionally jumping one house on either side. How much longer must the route be? No matter how clear the ordinance seems, a hundred nice questions may follow in its wake. The constitution does not require Brookfield to answer each of these before it may enforce the law. Incompleteness is a curse of language, as of human imagination. To say that precision is a precondition to enforcement is to say that no ordinance regulating speech may stand — a proposition the supreme court has rejected over and again. Schultz v. Frisby, 877 F.2d 6, 8 (7th Circuit 1989).
Summarizing, it is our opinion that resolution no. 93-983 is constitutional under the first amendment to the United States constitution because it is content-neutral, narrowly tailored to promote the significant government interest of protecting residential privacy and there are alternative channels of communication.
Very truly yours,
 ROBERT T. STEPHAN Attorney General of Kansas
 Mary Feighny Assistant Attorney General
RTS:JLM:MF:jm